IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00525-CNS-KAS

EARL FENNER JR.,

        Plaintiff,

v.

UNITED STATES GYPSUM COMPANY, *a Delaware Corporation*, and

L&W SUPPLY CORPORATION, *a Delaware Corporation*,

        Defendants.

### DEFENDANT UNITED STATES GYPSUM COMPANY'S MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY OF DR. DAPHNA MOTRO

        Plaintiff Earl Fenner, who brings claims of discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against his former employer, Defendant United States Gypsum Company ("USG" or "the Company"), seeks to introduce the expert testimony of Dr. Daphna Motro, Associate Professor of Management at Hofstra University, to address racial stereotypes and race discrimination in employment and post-organization employment. (*See* Report of Dr. Daphna Motro, attached hereto as Exhibit A, at p. 351). Dr. Motro's report also includes her opinions regarding Plaintiff's job search, damages and mental health. USG moves to strike Dr. Motro's proffered expert testimony for several reasons.

        First, Dr. Motro admitted that she is unqualified to render expert opinions as an economist, psychologist, or job search analyst (to opine on what jobs are available in Plaintiff's industry in Denver or elsewhere), despite opining on those issues in her report. Dr. Motro affirmed that she believes that she is an expert witness in the area of race discrimination ***only*** (Daphna Motro Deposition ("Motro Dep.")[1] 16:13-22).

---

[1] Excerpts from Dr. Motro's deposition are attached hereto as Exhibit B.

Second, Plaintiff fails to establish that Dr. Motro's report and testimony are reliable under the strictures of Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert*"). To the extent Dr. Motro purports to rely on the "social framework" methodology recognized by some courts, she fails to reliably apply that methodology because she relies on unrepresentative data that was selected and provided to her solely by Plaintiff's counsel, and she impermissibly provides ultimate legal conclusions derived from this data.

Third, Dr. Motro's report and testimony are irrelevant under Rule 702 and *Daubert* because racial stereotypes and race discrimination are issues that are familiar to a jury of laypersons and the court. Dr. Motro's opinions will not aid the factfinder in determining the ultimate issues in this case.

Fourth, the probative value of Dr. Motro's report and testimony is substantially outweighed by the risk of unfair prejudice and confusion under Federal Rule of Evidence 403. Dr. Motro's report concludes that Plaintiff's former manager Diane Earll utilized the "Angry Black Man" stereotype when she referred to Plaintiff's behavior in one meeting as "angry," and further concludes – based on supposition and conjecture alone - that USG engaged in microaggressions and microinsults, and exhibited bias against Plaintiff. Introducing this opinion would usurp the role of the jury in reaching these conclusions and is also highly prejudicial.

Based on all of these reasons, and as discussed in more detail herein, USG respectfully requests this court to strike Dr. Motro's report and exclude her testimony. USG does not believe that a hearing is necessary to address these issues.

I. **LEGAL STANDARD**

Under Rule 702 and the framework articulated by the Supreme Court in *Daubert* and its progeny, "the district court must satisfy itself that the proposed expert testimony is both reliable

and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *Schulenberg v. BNSF Railway Co.*, 911 F.3d 1276, 1282-83 (10th Cir. 2018) (citing Fed. R. Evid. 702); *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining a court's "gatekeeping" function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

The Court initially must determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Schulenberg*, 911 F.3d at 1282-83. The Court must then "determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology" because it is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 1283 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (explaining expert testimony should be excluded when "there is simply too great an analytical gap between the data and the opinion proffered.").

Further, even if an expert is deemed qualified and their opinion can be considered reliable, the expert's opinion must be relevant for it to be admissible, meaning that the expert testimony must be sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. *See Daubert*, 509 U.S. at 591.

Finally, expert opinions—like all evidence—may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403.

II.      ARGUMENT

    A.    **Dr. Motro Admitted That She Is Not Qualified to Render An Expert Opinion In Certain Areas**

Dr. Motro testified in her deposition that she was being retained to opine on "the extent to which the case involved a [sic] racial discrimination." (Motro Dep. 16:7-12). Dr. Motro also affirmed that she believes that she is an expert in race discrimination (*Id.* at 16:13-22).

Dr. Motro further testified that she is not an expert economist, psychologist, or job search analyst (to opine on what jobs are available in Plaintiff's industry in Denver or elsewhere). (*Id.* at 26:23-27:10, 27:19-24, 53:12-16). Because an expert must be qualified "by knowledge, skill, experience, training, or education" to render an opinion, *see* Fed. R. Evid. 702, and Dr. Motro is, by her own admission, not qualified in these areas, Dr. Motro's opinions regarding the following issues must be stricken: the ability of black men to secure jobs after termination (Ex. A at p. 352, 382), Plaintiff's ability to secure a job (Ex. A at p. 382-84), Plaintiff's damages (*Id.* at p. 383), the impact of discrimination on mental health and self-esteem (*Id.* at p. 383-84), and Plaintiff's mental health (*Id.* at p. 381, 384).

    B.    **Dr. Motro's Report And Testimony Are Unreliable.**

Rule 702 requires that the means or method by which the testimony or opinion is derived must be reliable. There are three specific requirements to establish reliability: (1) a showing that the testimony is based upon sufficient facts or data; (2) a showing that the testimony is the product of reliable principles and methods; and (3) a showing that the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702(b)-(d). This step of the analysis requires the judge to assess "whether the methodology employed by an expert is valid—that is, whether it is based on sufficient data, sound methods, and the facts of the case." *Roe v. FCA US LLC*, 42 F.4th 1175, 1181 (10th Cir. 2022).

4

Here, Dr. Motro's report summarizes general academic research to explain what stereotypes are, discuss the origin of certain racial stereotypes (in particular, the "Angry Black Man" stereotype), and address how and why individuals utilize racial stereotypes in the workplace. Based on this general research and other information provided by Plaintiff's counsel, Dr. Motro offers her opinions about whether Plaintiff was subjected to racial stereotypes and discrimination during his employment.[2] In fact, Dr. Motro testified in her deposition that she was being retained specifically to opine on "the extent to which the case involved a [sic] racial discrimination." (Motro Dep. 16:7-12)

### 1. Motro's Opinions Improperly Rely On Cherry-Picked Data

Dr. Motro's report and testimony are unreliable for several reasons. To begin, Dr. Motro employs either an undefined, or flawed, methodology to reach her conclusions. In her report, Dr. Motro fails to even identify the methodology she utilized. (*See* Ex. A). This alone is grounds to exclude her opinions. *See, e.g., Schulenberg*, 911 F.3d at 1284 (affirming exclusion of expert that "failed to identify any factual foundation or methodology behind [the expert's] opinions."); *Zykronix, Inc. v. Conexant Sys., Inc.*, No. 16-cv-00163-KLM, 2018 WL 1417701, at *4 (D. Colo. Mar. 22, 2018) ("Mr. Muscolino's testimony is inadequate to establish that his opinion is reliable under Rule 702(c) because he has failed to explain the methodology used to reach his conclusions."); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 268 (N.D. Ill. 2019) (excluding expert testimony where plaintiffs failed to describe process by which expert reached conclusions).

---

[2] Section II of Dr. Motro's report is entitled "Opinions," Ex. A at p. 351-52; however, Dr. Motro does not restrict the opinions expressed in her report to those set forth in this section. (*See e.g.*, Ex. A at pp. 367-68 (noting that USG and Diane Earll's behaviors towards Plaintiff exhibit the "angry black man" stereotype, and that "substantial evidence" exists that they used this stereotype to make prejudiced and discriminatory actions towards him.)

5

During her deposition, Dr. Motro testified regarding her methodology as follows: (1) she had 10-15 conversations with Plaintiff's counsel regarding the allegations in the case (Motro Dep. 19:25-21:11, 22:15-21); and (2) she reviewed (a) the research references listed in Section X of her report (some of which she had read previously), (b) Plaintiff's First Amended Complaint, (c) Diane Earll's deposition transcript, and (d) certain emails exchanged between Plaintiff and then Chief Human Resources Officer Noreen Cleary (*Id*. at 25:25-26:11, 28:8-29:9, 52:13-23; Ex. A). Dr. Motro did not receive or review Plaintiff's deposition transcript: she was unaware of its existence and was not interested in reading it. (Motro Dep. 32:20-23, 34:7-10). Dr. Motro also did not speak with any other current or former USG employees about any of the issues addressed in her report. (*Id*. at 26:12-17). Dr. Motro prepared 4-5 drafts of her report, and the initial draft was completed in November 2023; she sent each draft to Plaintiff's counsel for review, and then at Plaintiff's counsel's direction, she included his revisions in her subsequent drafts until the final draft was completed in January 2024. (*Id*. at 34:11-18, 40:7-18, 41:8-12, 42:25-43:8).

In short, the core of Dr. Motro's methodology consisted of her conversations with Plaintiff's counsel (including his instructions for revisions), in addition to a review of certain research articles, and the three items Plaintiff's counsel selected for her to review. She then provided Plaintiff's counsel with draft after draft of her report — until he was satisfied. This methodology is both improper — because it is almost entirely dictated by Plaintiff's counsel — and not "reliable," within the meaning of Rule 702. *See, e.g.*, *Van*, 332 F.R.D. at 269 ("Experts who engage in cherry-picking of the evidence fail to satisfy the scientific method and *Daubert*."); *EEOC v. Bloomberg L.P.,* No. 07 Civ. 8383(LAP), 2010 WL 3466370, at *14 (S.D.N.Y. Aug. 31, 2010) (excluding testimony because the expert relied "solely on the information fed to him by the EEOC without independently verifying whether the information is representative" which

6

"undermines the reliability of his analysis."); *Childers v. Trustees of the Univ. of Pa.,* No. CV 14-2439, 2016 WL 1086669, at *6 (E.D. Pa. Mar. 21, 2016) (excluding expert where methodology "of sifting through evidence to find passages that support the Plaintiff's theory of the case does not meet Rule 702's requirement of reliability.").

Indeed, the lack of reliability in Dr. Motro's report is perhaps best illustrated by the fact that she does not even consider, much less refute, the possibility that Plaintiff's own performance or conduct led to his termination. This omission is not surprising, given that Dr. Motro's report is based primarily on her conversations with Plaintiff's counsel and review of materials cherry-picked by Plaintiff's counsel; however, Dr. Motro testified that she read Diane Earll's deposition, which addresses Plaintiff's performance deficiencies/misconduct at great length. (*See* Diane Earll Deposition at pp. 83:7-16, 93:12-21, 94:17-25, 149:6-150:1, 212:17-25, 217:13-17, 229:3-21, 231:10-16, 232:15-19, 294:12-15, 315:13-23).[3] Thus, Dr. Motro's failure to even acknowledge these issues only further underscores that Dr. Motro's analysis does not satisfy Rule 702.

### 2.     Motro's Opinion Improperly Applies The Social Framework Methodology

Dr. Motro's approach is also flawed to the extent she was attempting to utilize the "social framework" methodology, in which an expert summarizes general research in a particular subject-area to provide context for the ultimate fact-finder to interpret case-specific evidence. *See* John Monahan, Laurens Walker & Gregory Mitchell, *Contextual Evidence of Gender Discrimination: The Ascendance of "Social Frameworks,"* 94 Va. L. Rev. 1715, 1717, 1719, 1747 (2008); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353-54, n.8 (2011) (discussing the "social framework" methodology and citing Monahan et. al., *supra*). Dr. Motro begins her report by summarizing social science literature on racial stereotypes, but she deviates from a proper

---

[3] Excerpts from Diane Earll's deposition are attached hereto as Exhibit C.

application of the social framework methodology because, as explained, her opinions are derived from case-specific facts solely provided to her by Plaintiff's counsel. Dr. Motro did not speak with any current or former USG employees to determine if her conclusions were based on a reliable representation of the workforce. (Motro Dep. 26:12-17). Instead, she worked closely with Plaintiff's counsel to prepare multiple drafts of her report, each one based only on her research and the information that counsel discussed with her or selected for her review. (*Id*. at 25:25-26:11, 28:8-29:9, 34:11-18, 40:7-18, 41:8-12, 42:25-43:8, 52:13-23). Thus, under the social framework methodology, Dr. Motro's report is improper because it rests on unrepresentative data provided solely by the Plaintiff's counsel. *See, e.g.*, *Bloomberg L.P.,* 2010 WL 3466370, at *14, *16 (excluding social framework opinion where the expert relied solely on the information fed to him by the EEOC, "made no effort to ensure that the materials he reviewed were representative," and effectively "intuited [his] conclusion[s].").

Further, an expert offering a social framework opinion may not give an ultimate conclusion about the central issue to be decided by the factfinder. Rather, a proper social framework report summarizes general research in a subject-area—here, racial stereotypes and discrimination in the workplace—which provides context for the ultimate factfinder to interpret case-specific evidence. *See* Monahan et. al., *supra* at 1745 (noting that a social science framework necessarily contains only general statements about reliable patterns of relations among variables and goes no further and criticizing expert who purported to present a social framework but testified about facts specific to case); *see also id.* at 1718 ("If linkages from general research findings to a specific case are to be made, those linkages must be recognized as arguments to be made by the attorneys, rather than evidentiary proof that can be offered by expert witnesses."). In other words, the social framework expert's testimony is offered ***not to prove discrimination in a particular case***—that determination

8

is one the fact finder will make in light of all of the evidence—but to offer information about how the phenomenon of stereotyping operates so that the fact-finder can assess the specific case in light of that information. *Van*, 332 F.R.D. at 267 (citing Melissa Hart & Paul M. Secunda, *A Matter of Context: Social Framework Evidence in Employment Discrimination Class Actions*, 78 Fordham L. Rev. 37, 52 (2009)).

Here, Dr. Motro's report and testimony are improper because she applies her general knowledge concerning stereotyping to the specific facts of this case and thereby provides conclusions that are properly within the jury's province as a factfinder. For instance, she concludes that the "[e]vidence shows that USG engaged in discriminatory and biased decisions when interacting with [Plaintiff]," and the use of "microaggressions" "ultimately [led] to [Plaintiff's] employment termination" (Ex. A at p. 384). Dr. Motro further opines that "[Plaintiff's] complaint [to Noreen Cleary] was based on race and the use of a racial stereotype," (Ex. A at p. 372), and that in addition to the characterization of [Plaintiff] as "angry", the use of the terminology "White v. Non-White" in a professional setting contributes to a hostile work environment based on race, (*Id*. at p. 381). She also opines that USG "fail[ed] to address" Plaintiff's concerns about being called "angry" and "[made] decisions based on the stereotype and his race-based complaints about the stereotype", and "did not appropriately address" the "White v. Non-White" comment, "conveying its disregard for racial issues." (*Id*. at p. 381). These legal conclusions regarding alleged discrimination and retaliation are improper under Rule 702. The factfinder, not Dr. Motro, must determine whether Plaintiff experienced unlawful discrimination (including a hostile work environment) or retaliation. *See Childers*, 2016 WL 1086669, at *5-6 (excluding social framework testimony where the expert did not simply summarize relevant social science literature to "give jurors a context within which to evaluate the evidence" for themselves.); *Gianfrancisco v.*

Case No. 1:23-cv-00525-CNS-KAS   Document 149   filed 05/02/24   USDC Colorado
pg 10 of 15

*Excelsior Youth Ctrs., Inc.,* No. 10-cv-00991-PAB-KMT, 2012 WL 2890916, at *4 (D. Colo. July 16, 2012) (excluding expert opinion that concluded an employer's compensation decisions were made based upon gender because "[t]he question of whether defendant discriminated against plaintiff is the very issue . . . the jury must decide.").

For all of these reasons, the Court should find Dr. Motro's report and her testimony inadmissible. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) ("Under *Daubert*, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.") (internal citations omitted).

### C. Dr. Motro's Report And Testimony Will Not Aid The Factfinder.

Dr. Motro's report also should be excluded because it will not assist in determining any question of fact at issue in this case and infringes on the jury's province as fact-finder.

A court may exclude expert testimony if such testimony is within the juror's common knowledge and experience. *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020). Where "normal experiences and qualifications of layman jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002); *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("where . . . expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact.") (internal quotation marks omitted).

By Dr. Motro's own admission, the very subject matter of her report concerns topics which are well-within the "common knowledge and experience" of the ultimate factfinder. Dr. Motro's report explains the "historic, recognized, racially offensive stereotype of an . . . 'Angry Black

Man,'"[4] which is a "racial trope" and a "common or overused theme or idea," that is "well-recognized in employment and organizational behavior." (Ex. A at p. 351). Given that the issues are well within the jurors' common knowledge and experience, Dr. Motro's report and testimony will not be helpful to the factfinder because the jury is capable of assessing these matters by itself. *Gianfrancisco*, 2012 WL 2890916, at *6 (excluding opinion where normal experience of jury was sufficient to draw conclusion in employment case); *Sanderson*, 976 F.3d at 1172.

Further, in employment discrimination cases, courts within the Tenth Circuit routinely exclude expert testimony that purports to opine on the ultimate issue of whether a defendant engaged in unlawful discrimination, finding that this "is the very issue which the jury must decide." *Gianfrancisco*, 2012 WL 2890916, at *4, *5 (excluding expert's opinion that defendant's compensation decisions were based on gender and instructing that expert's other testimony could not suggest that defendant's alleged failures were "indicative of discrimination"). This is because an expert may not simply tell the jury what result to reach but must instead allow the jury to exercise its independent judgment. *Id*.

Here, the ultimate issue to be decided by the jury is whether the "angry" comment and the "white/non-white" terminology used in a presentation thereafter were based on racial stereotypes and discrimination, ultimately leading to Plaintiff's termination. As Dr. Motro agrees, such determinations can be made by the jury without the aid of an expert. Indeed, courts have consistently excluded the very type of conclusory expert opinions on discrimination and

---

[4] Dr. Motro bases her discussion of the "Angry Black Man" stereotype exclusively from Ms. Earll's characterization of Plaintiff's behavior in a meeting as "angry," which is a fact undisputed by the parties. *See, e.g.*, Def's Answer and Affirmative Defs. To Pltf's First Am. Compl. And Counterclaim, at ¶ 65, Aug. 8, 2023 [ECF 66] ("Defendant admits that Ms. Earll told Plaintiff that she believed he seemed angry at her when she asked questions about his business and that she believed his behavior could be disruptive."); *Id.* at ¶ 67 ("Defendant admits that Plaintiff told Ms. Earll he was offended by the term 'angry.'"); *Id.* at ¶ 72 ("Defendant admits that Plaintiff raised his concerns regarding Ms. Earll's use of the word 'angry' to Noreen Cleary, USG's Chief Human Resources Officer.").

stereotypes that Dr. Motro offers in her report. *See Sanderson*, 976 F.3d at 1173 (affirming exclusion of expert testimony on gender stereotypes in law enforcement because "gender stereotypes are within the juror's common knowledge and experience."); *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1219 (10th Cir. 1998) (excluding expert testimony on whether recruitment plan constituted harassment and retaliation, which involved issues "readily within the comprehension and ability of the jury."); *Smith v. Colo. Interstate Gas Co.*, 794 F. Supp. 1035, 1044 (D. Colo. 1992) (excluding expert testimony on race and gender biases and stereotypes because "[g]ender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert."); *see also Haydar v. Amazon Corp., LLC*, No. 2:16-cv-13662, 2019 WL 5079704, at *5 (E.D. Mich. Oct. 10, 2019) (finding testimony regarding unconscious bias would be unhelpful in determining whether employer intentionally discriminated against plaintiff where jury would hear statements and opinions of relevant employees).

Accordingly, the Court should exclude Dr. Motro's report and her testimony.

### D.     Dr. Motro's Report And Testimony Are Prejudicial.

The probative value of evidence of Dr. Motro's opinions is substantially outweighed by their prejudicial effect; thus, they should be excluded. *See* Fed. R. Evid. 403.

Dr. Motro begins her report by discussing the existence of certain racial stereotypes in society as a general matter and how all individuals may be susceptible to relying on racial stereotypes. (*See* Ex. A at pp. 351-367). Dr. Motro, however, then goes on to conclude (based on cherry-picked facts provided by Plaintiff's counsel) that "evidence shows that USG engaged in discriminatory and biased decisions when interacting with [Plaintiff]" (*Id*. at p. 384), Ms. Earll fell prey to the "Angry Black Man" stereotype when she characterized Plaintiff's behavior as "angry," (*Id*. at p. 371), and that Plaintiff experienced "microaggressions," "microinsults," and "bias" as a result, including the Company's use of white/non-white terminology to describe the demographics

of the sales organization in a presentation. (*Id*. at pp. 373, 374, 377, 384). Dr Motro also opines that there is "substantial evidence" that "USG and Ms. Earll used the Angry Black Man stereotype in making and taking prejudiced and discriminatory actions" toward Plaintiff. (*Id*. at p. 368.) During her deposition, Dr. Motro explained that substantial evidence means that this "was not simply due to chance." (Motro Dep. 36:20-37:5). However, whether or not there is *any* "evidence" to support discrimination is an issue for the jury to decide, and Dr. Motro cannot usurp the jury's role in this process. *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) (expert cannot usurp the function of the jury in deciding the facts or the judge in instructing the jury on the law). In short, rather than simply provide context from which the jury can draw to render its determination, Dr. Motro offers actual conclusions as to the existence of alleged discrimination and thereby infringes on the province of the jury — it is the equivalent of Dr. Motro asking the jury to simply accept her opinion in place of its own assessment of the evidence and law. Thus, Dr. Motro's testimony is prejudicial and should be excluded. *Van*, 332 F.R.D. at 271 (excluding conclusory opinion of expert because "courts have concluded that expert testimony in the form of legal conclusions is not helpful to the trier of fact and that such testimony therefore should be exclude[d] under Rule 702.").

Dr. Motro's report also reaches speculative conclusions, such as the following:

- Ms. Earll "***likely attributed***" Plaintiff's behavior to the fact that he is an "angry black man" and she "***would be likely***" to attribute his behavior to a particular trait; namely, his race (Ex. A, p. 370) (emphasis added).

- Plaintiff's initial objection to the use of the term "angry" as stereotypical "***could have poisoned*** Ms. Earll" by reinforcing her perceptions that he was an angry person or that certain subsequent actions vis a vis Plaintiff "***could be the result***" of viewing him as an angry person. (*Id*. at p. 374-75) (emphasis added).

- Plaintiff "***likely experienced***" mental and physical afflictions, including emotional pain, stress, and anxiety. (*Id*. at p. 381) (emphasis added).

13

- Plaintiff's behavior ***could have fueled*** Ms. Earll's perceptions of black men as angry and also generated negative consequences (*Id*. at p. 384) (emphasis added)

By their literal terms, these statements are not definitive opinions and instead amount to speculation or guesswork. They certainly do not assist the jury in rendering a determination and should be excluded. *See Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009) ("[I]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."); *JetCraft Corp v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir. 1993); *East Ridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 783 (10th Cir. 1988) (expert testimony excluded as tentative and speculative).

### III.  CONCLUSION

In light of the foregoing, Defendant USG Corporation respectfully requests that the Court strike the report and testimony of Plaintiff's expert, Dr. Daphna Motro.

Dated: May 2, 2024    */s/ Colette L. Kopon*
Paul Bateman
pbateman@littler.com
Shanthi V. Gaur
sgaur@littler.com
Colette L. Kopon
ckopon@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Telephone:    312.372.5520
Facsimile:    312.372.7880

*Attorneys for Defendant United States Gypsum Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 2nd day of May, 2024, she electronically filed the foregoing ***Defendant United States Gypsum Company's Motion to Exclude Expert Opinion and Testimony of Dr. Daphna Motro*** with the Clerk of Court using the CM/ECF system and that a true and correct copy of same was served upon the below counsel via the Court's CM/ECF system:

>Steven L. Murray
>Murray Law, LLC
>3900 East Mexico Avenue, Suite 300
>Denver, CO 80210
>steven@smurraylaw.com

>*/s/ Colette L. Kopon*
>Colette L. Kopon